IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RYAN BLAY, on behalf of himself and all others similarly situated, | **JURY TRIAL DEMANDED** |
| Plaintiff, | |
| v. | No. |
| ZIPCAR INC., | |
| Defendant. | |

## CLASS ACTION COMPLAINT

NOW COMES Plaintiff Ryan Blay, on behalf of himself and all persons similarly situated and, except as to those allegations pertaining to Plaintiff or Plaintiff's attorneys, which are based upon personal knowledge, alleges the following upon information and belief against Defendant, Zipcar Inc. ("Zipcar"):

### I.  INTRODUCTION

1.  Zipcar provides self-serve car rental services to U.S. consumers in the United States including in metropolitan areas such as Boston, Chicago, New York City, and elsewhere.  Customers who pay an annual Zipcar membership fee may reserve an available car by selecting a car in Zipcar's fleet to rent in half-hour multiples or by the day.

2.  Plaintiff asserts that Zipcar's practices of imposing certain Charges on its customers is unlawful, and thus seeks declaratory and injunctive relief, restitution and damages for Zipcar customers and those who have incurred the Charges.

### II.  PARTIES, JURISDICTION AND VENUE

3.  Plaintiff is a citizen of the State of Illinois.  Plaintiff, a Zipcar customer beginning in around April 2007, paid the requisite Zipcar application and annual membership

fees, fulfilled the obligations required of him pursuant to Zipcar's standardized customer contract ("the contract"), and incurred customer Charges at issue in this case.

4. Defendant is a domestic corporation with its principal place of business in Boston, Massachusetts, where transactions or conduct giving rise to Plaintiff's claims occurred and where Defendant routinely does business. Defendant made or was likely to have made key decisions and to institute practices, regarding the Charges, from its home offices in Massachusetts.

5. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d)(2). Based on the total value of the claims of Plaintiff's and the other Class members, the total amount in controversy in this case exceeds $5,000,000.

6. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant reside in this judicial District, and a substantial part of the events giving rise to Plaintiff's claims arose in this District.

### III.  SUBSTANTIVE ALLEGATIONS

**A. Nature of Zipcar's Business**

7. Defendant is in the business of providing cars to consumers, who must buy a membership in order to use Zipcar. Customers apply and pay an annual membership fee, *e.g.,* fifty dollars.

8. Customers have a fleet of Zipcar cars to choose from, parked in various third-party parking garages. To reserve a car, the customer logs-in to Zipcar's website or calls Zipcar, designates the start and end times to the nearest half-hour, and selects a car and location. The car is then available for use by the customer, who can unlock the car using the customer's one-size-fits-all magnetic key-card that can be used to unlock any reserved vehicle.

9. Zipcar automatically debits monies and the Charges from customers' bank accounts per reservation, and charges them an hourly rate per car rounded to the nearest half

hour (or a daily rate), with gas and insurance included. Hourly rates have typically varied from around eight to thirteen dollars, plus applicable state or municipal taxes applicable to rental cars.

10. Zipcar makes cars available for rental in locations in close proximity to each other in metropolitan areas. Zipcar employs technology enabling it to remotely track vehicles and reservations including miles traveled, vehicle location, pending reservations, and other details, and which also enables Zipcar to have protocols in place to systematically impose the customer charges at issue.

11. Zipcar conducts market research or surveys to gauge customer demands or habits.

12. A relatively new and immensely successful business, Zipcar has grown in membership remarkably quickly, having doubled or tripled in size annually since start-up in the year 2000. In June 2009, Zipcar was reported to have 275,000 members.

13. So confident was its CEO, Robin Chase, that Zipcar would grow epically, that Ms. Chase has opined: "Ten years from now I could envision us in an antitrust suit case; we would be everywhere."[1]

### B. Zipcar's Discreet Medley of Customer Charges

14. Zipcar has built-in to its contract a variety of customer charges, which are the subject of this action and which unfairly and unconscionably penalize its customers. These charges, at their present rates – hereinafter, the Customer Charges or Charges – include those that Zipcar dubs "penalties," and provide a desirable revenue stream for Zipcar.

15. Though most of the Charges are provided for under the customer contract, customers are not often aware that they have been debited a Charge because Zipcar provides

---

[1] Interview with Robin Chase, Bloomberg News Television *Venture* program, Nov. 22, 2008.

no separate notice of Charges and does not send customers a monthly statement or bill, by mail or by email. However, Zipcar keeps computerized records of Charges incurred by its customers including Plaintiff.

16. Plaintiff and other Zipcar customers incurred Charges, and are reasonably likely to incur Charges as they continue to use Zipcar, including the following:

### a. *Charges Imposed When a Reservation Cannot Be Used*

17. Zipcar charges customers a $3.50 Charge for reservations, extensions or cancellations that the customer makes by phone through the help of a Zipcar customer and not through its website or automated phone system.

18. Zipcar has imposed these Charges even when the reserved vehicle cannot be used, *e.g.*, when the customer calls Zipcar to report a problem with the reservation, such as that the garage door in which the vehicle is located would not open; while such circumstances necessitate help from a "live" phone representative, Zipcar has imposed a service fee in such instances.

19. Such Charges penalize the customer for requesting help from a customer service representative by phone, or for informing the telephone customer service representative of the reason necessitating change or cancellation of the reservation. Thus, such Charges are unavoidable, cannot be controlled by the customer, and the customer is unaware in advance that the Charge would be incurred.

### b. *Charges for Parking Tickets or Moving Violations*

20. Zipcar rightfully requires customers to pay parking tickets and moving violation tickets incurred during a reservation.

21. If Zipcar receives notice of a parking ticket or moving violation associated with a vehicle rented by the customer, its policy is to impose on the customer a Charge – for example, twenty dollars – in addition to a charge for the amount of the ticket or violation.

22. As a matter of policy, Zipcar automatically imposes the Charge regardless of whether or not the ticket or moving violation was in error, deserved, or the customer's fault, and has no mechanism in place to address same.

### c. *Late Fee Charges*

23. Zipcar charges a late fee, which it describes as a penalty for returning a car after the ending time of the reservation. Sometime between September 2007 and January 2007 and continuing to the present day, Zipcar inexplicably inflated its late fee from twenty-five dollars to fifty dollars per late hour or any portion thereof, for late returns. The late fee, which can be up to and including one-hundred-and-fifty dollars, is in addition to regular per-hour fees for use of the vehicle past the end time of the reservation.

24. Thus, under Zipcar's late fee policy, a car that is returned one minute late is subject to a fifty-dollar late fee; a car that is returned one hour late is subject to a fifty-dollar late fee; and a car returned one hour and one minute late is subject to a one-hundred dollar late fee.

25. Zipcar charges the same late fee regardless of whether a reservation is pending after the reservation end-time.

26. Zipcar's late fee policy can result in a customer paying three times the amount of a full day's rental when adding the one-hundred-and-fifty dollar late fee charge to the regular daily rental fees.

27. In the event that a vehicle is not available to a customer who has reserved that vehicle, Zipcar's practice is to instantly redirect the customer to a car in the same location or in a cluster of nearby locations.

### d. *Charges for Returning to the Vehicle to Retrieve Lost Items*

28. For a host of Zipcar members, including those who do not make reservations so frequently, and in general, it is by no means unheard of for a driver to accidentally leave an item in the Zipcar vehicle at the end of a reservation.

29. However, in order to retrieve a left-behind item from the vehicle more than three hours after the reservation has ended, Zipcar requires the customer to make a new reservation for at least one hour.

30. This practice is pursuant to Zipcar's standard policy but was/is not readily disclosed in Zipcar's Contract or on its website.

31. On information and belief Zipcar has other policies or practices pursuant to which it imposes Customer Charges, which it does not disclose to Plaintiff and the Class at the time of membership sign-up or in advance of imposing the Charges.

### e. *Charges for Holding Deposits*

32. Zipcar levies a twenty-dollar service charge per month when a customer account is inactive and Zipcar maintains the possession of the customer's monies and keeps the customer's account open.

33. Zipcar's customer membership contract specifically provides, "If the Member has a deposit with Zipcar and Member does not respond to an inactivation notification, Zipcar will assess a $20 service charge per month on any remaining Member deposit amounts held until depleted. If the Member does not have a deposit with Zipcar, Zipcar reserves the right to close the Member's account." Zipcar Membership Contract § 4.4.

34. In other words, Zipcar gratuitously debits twenty dollars per month from the deposits of customers who are *not* using Zipcar.

35. Zipcar levies the Charge despite benefiting from having the customer's deposit money.

36. Though the Charge is twenty dollars per month, Zipcar's annual membership fee is fifty dollars.

**The Customer Charges Are Unlawful**

37. The above-described Customer Charges unfairly penalize customers for breaching its terms and/or for wavering from Zipcar's emphasis on preserving an automated customer relationship.

38. The Customer Charges are disproportionate to Zipcar's anticipated damages to an extent so as to constitute an illegal penalty.

39. As a result, the Zipcar customer contract and/or provisions therein for such Charges are void and unenforceable.

40. Clearly the Customer Charges are a source of revenues for Zipcar, and are intended to induce customers to do business with Zipcar as intended by Zipcar, *i.e.*, so as not to have their accounts become inactive, not to return their vehicles late, not to incur parking tickets or moving violations, and to minimize customer service hassle for Zipcar.

41. The Customer Charges may serve these aims but are arbitrary and capricious relative to any costs or losses that Zipcar incurs or can reasonably anticipate in connection with the aforementioned facts triggering each Charge, and are not a reasonable estimate of the actual or probable losses incurred by Zipcar.

42. Zipcar can anticipate its losses due to the conduct precipitating the Charges; Zipcar knows and/or should know that the Charges it collects exceed the "damages" incurred from the aforementioned facts that trigger each of the Customer Charges to be levied as per Zipcar protocol.

43. Customer Charges give a windfall to Zipcar insofar as they are penalties that over-compensate Zipcar for any actual (or anticipated) loss, in violation of the common law and public policy.

44. Zipcar's customer contract recognizes the potential for such challenges to its Customer Charges, purporting that Zipcar customers agree that if any term of its contract is unenforceable, "to substitute for the invalid provision a valid provision that most closely

approximates the intent and economic effect of the invalid provision." Zipcar Membership Contract § 7.3.

45. Fees similar to Customer Charges imposed by similar vehicle rental businesses are not nearly as exorbitant as Zipcar's.

46. Zipcar automatically debits the Customer Charges from customer credit cards to its benefit, but to its customers' financial detriment.

**Massachusetts Law Governs**

47. Zipar's customer contract provides that Plaintiff, the putative Class members and Zipcar have consented that this Court has jurisdiction over Plaintiff's claims, and that Massachusetts law governs the claims at issue in this case.

48. As stated in Zipcar's customer contract:

> This Contract is governed by the laws in force in Massachusetts and shall be interpreted according to the internal laws of such state, without reference to its conflicts of laws or choice of law rules. All disputes hereunder shall be resolved solely in the applicable state or federal courts of Massachusetts. The parties hereby consent to the sole jurisdiction of such courts, agree to accept service of process by mail, and waive any jurisdictional or venue defenses otherwise available.

## IV. <u>CLASS ALLEGATIONS</u>

49. Plaintiff brings this action individually and pursuant to Federal Rule of Civil Procedure 23 and its various subsections, on behalf all Zipcar customers (the "Injunctive Relief Class") and Zipcar customers who have incurred a Customer Charge at the presently imposed rates ("Charge Class").[2] Excluded from the Class are Defendant's officers and employees, Plaintiff's counsel, any member of the judiciary presiding over this action, and their immediate families.

50. Plaintiff reasonably believes that each Class is so numerous as to make joinder of all members impracticable.

51. Questions of law and fact common to the Class members predominate over questions affecting only individual Class members and include as follows:

   a. Did Zipcar automatically debit Customer Charges from Plaintiff and the Charge Class?

   b. Are the Customer Charges (or a portion thereof) unlawful penalties under Massachusetts law?

   c. Does imposition of the Customer Charges violate applicable common law?

   d. Are Plaintiff and the Injunctive Relief Class entitled to the requested injunctive relief?

52. Plaintiff's claims are typical of those of the Class members.

53. Plaintiff will fairly and adequately protect the Class members' interests, has no interests antagonistic to the community interest of the Class members, and has retained counsel experienced in class action litigation.

54. A class action provides an appropriate, superior, and expeditious means to adjudicate and manage this controversy because, among other things:

---

[2] Herein, references to "Class members" or to the "Class," unless designated otherwise, are to members of both Classes including Plaintiff.

- Zipcar's relevant policies and Customer Charges are equally applicable to Plaintiff and the putative Class members;
- joinder of all Class members is impracticable;
- many members' damages are small relative to the burden and expense of prosecuting an individual claim, particularly given the resources available to Zipcar—so that absent a class action many class members will have no means to prosecute their claim; and
- pursuant to Zipcar's contract and thus by Zipcar's design, the Class members' claims are subject application of a single State's law—Massachusetts.

## CAUSES OF ACTION

55. Plaintiff alleges the following causes of action individually and on behalf of the Classes as pleaded, and as necessary alleges the following in the alternative to the fullest extent permitted by law.

## COUNT I

### Unjust Enrichment

56. Plaintiff incorporates by reference and realleges each of the foregoing allegations as though set forth in full herein, and brings Count I on behalf of himself and the Charge Class.

57. Provisions in Zipcar's customer agreement pursuant to which Zipcar imposes the Customer Charges are void and unenforceable, and Zipcar has thus been wrongfully and unjustly enriched by employing the use of its void Charge provisions and member agreement.

58. By paying money under void and illegal contracts or contract terms, Plaintiff and the other members of the Charges Class conferred a benefit upon Zipcar, which Zipcar unjustly retained.

59. It is against equity and good conscience to permit Zipcar to retain the profits and benefits it has received as a result of its wrongful practices described above.

60. Zipcar should account for all Customer Charges improperly collected and withheld, should have a constructive trust imposed on said monies received, and should be enjoined from its use of the above-described contracts, contract provisions and/or Customer Charge fee schedules, until further order of the Court.

WHEREFORE, Plaintiff prays for the following relief:

A. An order certifying the Charge Class defined above, appointing Plaintiff as Class representative, and appointing Plaintiff's counsel as Class counsel;

B. A finding that Defendant is in violation of applicable law;

C. An award of restitution to Plaintiff and the Charge Class;

D. Establishment of a constructive trust consisting of Customer Charges improperly collected and withheld, until further order of the Court;

E. Reasonable attorney's fees and costs; and

F. Such further and other relief the Court deems appropriate.

## COUNT II

### Money Had and Received

61. Plaintiff incorporates by reference and realleges each of the foregoing allegations as though set forth in full herein, and brings Count II on behalf of himself and Charge Class.

62. Zipcar received monies for Customer Charges belonging to the Plaintiff and the other Charge Class members.

63. Zipcar benefited from receipt of the monies.

64. Under principles of equity and good conscience, Zipcar should not be allowed to keep such monies.

WHEREFORE, Plaintiff prays for the following relief:

A. An order certifying the Charge Class defined above, appointing Plaintiff as Class representative, and appointing Plaintiff's counsel as

        Class counsel;

B.     A finding that Defendant is in violation of applicable law;

C.     An award of restitution or damages to Plaintiff and the Charge Class;

D.     Establishment of a constructive trust consisting of Customer Charges improperly collected and withheld, until further order of the Court;

E.     Reasonable attorney's fees and costs; and

F.     Such further and other relief the Court deems appropriate.

## COUNT III

### Declaratory Judgment

65.     Plaintiff incorporates by reference and realleges each of the foregoing allegations as though set forth in full herein, and brings Count III on behalf of himself and each Class.

66.     As set forth above, Zipcar's customer contract provisions providing for imposition of the Customer Charges are void, unenforceable, and unconscionable; and/or Zipcar is not entitled to impose its present medley of Customer Charges, as a matter of law and/or because the Charges are not authorized under the contract.

67.     Despite this, Zipcar continues to attempt to enforce the contracts and applicable provisions and impose the Customer Charges.

68.     Zipcar has interests adverse to Plaintiff and the other Class members, in that, by having a policy of debiting Customer Charges from Class member credit cards or financial accounts pursuant to unlawful, void, and unenforceable contract provisions, Zipcar benefits at their expense.

69.     Plaintiff and the putative Class members have substantive legal interests in the value of their Zipcar contract, in Customer Charges that Zipcar debited from their accounts, and/or in the ongoing use of Zipcar consistent with the protections of applicable law.

70.     Members of the Class are entitled to a declaration of rights regarding Customer Charges incurred and which are reasonably likely to be incurred.

71. The balancing of the hardships weighs in favor of granting appropriate injunctive relief, for which there is no adequate remedy at law.

72. Accordingly, there is an actual controversy between the parties, requiring a declaratory judgment.

73. Plaintiff requests that the Court declare the Customer Charges to be void and unenforceable, unconscionable, and/or illegal penalties, in violation of the common law.

74. Plaintiff further requests that the Court enjoin Zipcar from continuing to levy and debit Customer Charges, and require Zipcar to adequately notify its members of any Customer Charges that the Court does not deem unlawful.

WHEREFORE, Plaintiff prays for the following relief:

A. An order certifying the Injunctive Relief Class and Charge Class defined above, appointing Plaintiff as Class representative, and appointing Plaintiff's counsel as Class counsel;

B. A declaration that Zipcar's Customer Charges, and/or customer contract and/or provisions giving rise to Customer Charges, are void, unenforceable, and/or unconscionable under applicable law;

C. Other declaratory and injunctive relief as set forth in Count III;

D. Establishment of a constructive trust consisting of Customer Charges improperly collected and withheld, until further order of the Court;

E. Reasonable attorney's fees and costs; and

F. Such further and other relief the Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury for all matters complained of herein that are so triable.

Respectfully submitted,

RYAN BLAY, on behalf of himself and all others similarly situated

By: */s/ Eugene Richard*
    One of Plaintiff's Attorneys

Eugene Richard
**WAYNE, RICHARD & HURWITZ LLP**
One Boston Place, Suite 3620
Boston, MA 02108
(617) 720-7870

Brian J. Wanca
**ANDERSON + WANCA**
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
(847) 368-1500
*pro hac vice application pending*

Phillip A. Bock
**BOCK & HATCH LLC**
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
(312) 658-5501
*pro hac vice application pending*

Ilan Chorowsky
**PROGRESSIVE LAW GROUP LLC**
222 W. Ontario Street, Suite 310
Chicago, IL 60610
(312) 787-2717
*pro hac vice application pending*