**United States District Court**
**District of Massachusetts**

```
_____   )
RYAN BLAY, on behalf of himself    )
and others similarly situated,     )
         Plaintiff,                )
                                   )    Civil Action No.
         v.                        )    09-11683-NMG
                                   )
ZIPCAR, INC.,                      )
         Defendant.                )
_____   )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Ryan Blay ("Blay") brings a putative class action against defendant Zipcar, Inc. ("Zipcar") for 1) unjust enrichment, 2) money had received and 3) declaratory judgment based upon allegations that certain fees charged to "members" of a rental car company are unlawful. Before the Court are Zipcar's motion to dismiss and Blay's motion to strike.

**I.   Background**

**A.   Factual Background**

This dispute arises out of plaintiff's dissatisfaction with miscellaneous customer charges that it believes are unlawfully high. Zipcar provides a car-sharing service to members who, upon approval of their application, sign a membership agreement and pay an annual membership fee. For predetermined hourly rates, members may reserve cars, which are parked throughout various metropolitan areas, in half-hour increments for periods of one

-1-

hour or more.  If the reservation proceeds without incident, the
hourly rate plus taxes are automatically charged to customers.

According to Zipcar's membership contract, however, the
company may also impose various additional charges under certain
circumstances.  Five such charges are at issue in this case:

1) a $3.50 charge for reservations, extensions or
cancellations made by phone with a live Zipcar
representative (instead of online or through an
automated phone system);

2) an automatic fee charged whenever a customer receives a
parking or traffic ticket that Zipcar processes
(regardless of error or fault and allegedly without a
mechanism for lodging such complaints);

3) escalating late fees starting at $50 which are imposed
when a car is late and regardless of whether the
vehicle has been reserved in the following time slot;

4) a policy pursuant to which a customer who forgets
something in a vehicle must 1) recover the item within
three hours after he returns the car, 2) make a new
reservation (for at least one hour) in order to
retrieve it or 3) attempt recovery through an online
lost and found; and

5) when a customer's account is inactive, she is charged
$20 per month if she has monies deposited with Zipcar
and, if no money is on deposit, Zipcar may terminate
her membership.

Plaintiff alleges that these charges are attempts to induce
customers to do business with Zipcar as Zipcar intends (e.g., not
returning cars late or maintaining inactive accounts).  Plaintiff
claims, moreover, that the fees are unrelated to Zipcar's
associated costs or expenses and are therefore unenforceable
penalties that generate windfalls to Zipcar.

-2-

Blay was a Zipcar member from April, 2007 through May, 2009.
He claims that he has incurred customer charges at issue and
seeks monetary and injunctive relief on behalf of a putative
class of Zipcar members.

### B.   Procedural History

Blay filed his complaint on October 17, 2009 and, in
December, 2009, Zipcar responded with a motion to dismiss.  Blay
submitted a timely opposition and Zipcar replied.  In February,
2010, plaintiff filed a motion to strike certain documents
submitted by Zipcar in connection with its motion to dismiss
which Zipcar opposed the same month.  The Court heard oral
argument on the pending motions at a scheduling conference on May
19, 2010.

## II. Analysis

### A.   Blay's Motion to Strike

It is well-settled that, on a motion to dismiss, a court may
not generally consider extrinsic documents or evidence.
Exceptions to that rule are allowed for documents, inter alia, 1)
attached to the complaint, 2) sufficiently referred to in the
complaint or 3) central to the plaintiff's claims.  E.g.,
Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993).

Plaintiff moves to strike the following documents submitted
in accordance with Zipcar's motion to dismiss and reply
memorandum: 1) the Zipcar membership agreement, 2) an email from

-3-

Blay ending his Zipcar membership, 3) various snapshots from Zipcar's website regarding the allegedly improper charges and 4) an excerpt from Zipcar's Standard Operating Procedure.  In particular, Blay argues that none of the documents submitted by defendants falls under any permissible exception because 1) they are not incorporated into the complaint and 2) they are not authenticated.

Zipcar rejects both of Blay's arguments.  With respect to authenticity, Zipcar contends that, as is common practice, it has submitted a lawyer's sworn affidavit verifying the documents and even attaches two affidavits from Zipcar employees confirming the documents' authenticity.  Second, Zipcar argues that documents are all sufficiently referred to in the complaint or are central to plaintiff's claims.  The member agreement is referenced, as is the company's website.  The agreement explicitly states, moreover, that the website's fee schedules are part of the membership contract.  Zipcar contends that the email and the Standard Operating Procedure are both central to the claims because the former implicates standing (an issue for which courts may consider extrinsic evidence) and the latter is necessary to refute the complaint's mischaracterizations regarding Zipcar's "policy" for assessing the $3.50 live agent fee.

Blay's motion will be denied.  The only document that presents a potentially close question is Zipcar's Standard

Operating Procedure.  Zipcar is correct, however, that Blay
should not be allowed to make various characterizations about
Zipcar's policies central to his complaint and simultaneously
strike Zipcar's attempt to point out any misrepresentations
therein.  Moreover, as Zipcar maintains, this document merely
confirms what the member agreement already states: that a $3.50
charge is only applied when a reservation is made, cancelled or
extended with a live agent.

**B.    Zipcar's Motion to Dismiss**

**1.    Motion to Dismiss Standard**

To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to "state a claim to
relief that is plausible on its face." Bell Atlantic Corp. v.
Twombly, 550 U.S. 544, 570 (2007).  In considering the merits of
a motion to dismiss, the Court must accept all factual
allegations in the complaint as true and draw all reasonable
inferences in the plaintiff's favor.  Langadinos v. American
Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  If the facts in
the complaint are sufficient to state a cause of action, a motion
to dismiss the complaint must be denied.  Nollet v. Justices of
the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000)
aff'd, 248 F.3d 1127 (1st Cir. 2000).

Although a court must accept as true all of the factual
allegations contained in a complaint, that doctrine is not

applicable to legal conclusions.  <u>Ashcroft</u> v. <u>Iqbal</u>, 129 S. Ct.
1937, 1949 (2009).  Threadbare recitals of the legal elements,
supported by mere conclusory statements, do not suffice to state
a cause of action.  <u>Id.</u>  Accordingly, a complaint does not state
a claim for relief where the well-pled facts fail to warrant an
inference of any more than the mere possibility of misconduct.
<u>Id.</u> at 1950.

### 2.   Application

Zipcar moves to dismiss Blay's complaint because 1) agreed-
upon fees represent alternative performances under the contract
2) the existence of an agreement renders quasi-contract remedies
unavailable, 3) Blay cannot seek the return of payments
voluntarily made or turn an affirmative defense into a cause of
action, 4) Blay lacks standing to assert claims regarding fees he
was never charged and claims for declaratory or injunctive relief
and 5) the complaint fails to meet the requisite pleading
standards in claiming that the fees are illegal penalties.
Because Zipcar's fifth argument pervades plaintiff's claims, it
will be considered in connection with the first.

### a.   Alternative Performance, Liquidated Damages or Penalties

The parties dispute how to classify (and thus how to
analyze) the fees at issue.  On one end are so-called alternative
contracts.  The concept of an alternative performance contract
has been largely absent from Massachusetts case law over the past

century and Zipcar's memorandum contains numerous citations to
other jurisdictions and to Massachusetts cases from the 1920s or
earlier.  Assuming that the doctrine is still valid, it provides
that:

> A contract may give an option to one or both parties to
> either perform a specified act or make a payment.
> Although this form of contract cannot be used as a cover
> for the enforcement of a penalty, if on a true
> interpretation, it appears that it was intended to give
> a real option, that is, that it was conceived possible
> that at the time fixed for performance, either
> alternative might prove the more desirable, the contract
> will be enforced according to its terms.

14 Williston on Contracts § 42:10 (4th ed. 2010).

On the other hand, a contract may also purport to present an
alternative but in fact contemplate a single performance with a
penalty or a liquidated damages sum stated as an alternative.
Id.  What renders a provision as an unenforceable penalty,
however, is not subject to bright-line analysis.  TAL Fin. Corp.
v. CSC Consulting, Inc., 844 N.E.2d 1085, 1093 (Mass. 2006).  In
general,

> a liquidated damages provision will be enforced when, at
> the time the agreement was made, potential damages were
> difficult to determine and the clause was a reasonable
> forecast of damages expected to occur in the event of a
> breach.  Conversely, [such] damages will not be enforced
> if the sum is grossly disproportionate to a reasonable
> estimate of actual damages made at the time of contract
> formation.

Id. (citation omitted).  A party challenging a payment term as an
unenforceable penalty bears the burden of proof.  Id. at 1091-92.

Here, Zipcar contends that, with respect to each of the

-7-

disputed charges, its membership contract allows for alternative performance and is thus an alternative contract. Moreover, Zipcar asserts that the payment provisions contemplate a continuation of the contractual relationship and, therefore, cannot be analyzed under the rules of liquidated damages because no breach occurs (and thus damages are not at issue) when payment provisions are invoked.

Blay, by contrast, characterizes the subject fees as unenforceable penalties. First, he contends that the charges at issue are not reflective of a permissible alternative contract because 1) the contract does not present any true options to drivers, 2) the charges are hidden and do not represent the product of contractual bargaining between equally-situated parties and 3) the fees are intended to compel compliance with terms as dictated by Zipcar, which is unlawful. Instead, Blay argues, the provisions are properly analyzed according to the rules for liquidated damages provisions. Then, because the charges are disproportionate to Zipcar's reasonably anticipated damages and bear no reasonable relation to its costs, Blay contends that they represent unlawful penalties rather than enforceable liquidated damages terms.

Plaintiff's complaint and his memorandum are replete with allegations that, for instance, the charges are excessive, arbitrary and disproportionate to Zipcar's costs. Plaintiff does

-8-

not, however, offer any basis for such a claim other than the
threadbare assertions themselves.  In his opposition, Blay
responds to Zipcar's argument that his complaint is inadequately
pled by circularly restating his legal conclusion:

> The inequitable nature of the fees and charges is
> apparent because they are unreasonably and grossly
> disproportionate to the real damages from the breach and
> unconscionably excessive.

(quotation marks omitted).  Furthermore, at oral argument,
plaintiff's only justification of his complaint was based upon
"intuition" and a "smell test".  More is required to survive a
motion to dismiss and Blay's claims based upon four of the five
fees will therefore be dismissed without prejudice.  Each is
considered in turn.

1) <u>$3.50 live representative fee</u>: Zipcar charges a $3.50
charge for reservations, extensions or cancellations made over
the phone with a live representative.  According to Zipcar, it
represents a clear alternative performance term.  The customer
may make reservations, cancellations or extensions online or
through an automated phone system or may elect, for a small fee,
the comfort of speaking with a representative.  Attempting to
sidestep that characterization, Blay counters that the fee is
assessed regardless of the reason a member calls.  That includes
situations when a driver has no choice but to seek out a live
representative such as arriving for a reservation only to find
that the car is unusable because, perhaps, the garage door does

-9-

not open.  Pointing to the member agreement and standard
operating procedures, Zipcar retorts that in such a situation,
the fee is not charged because the call is not placed to make,
extend or cancel a reservation.  Indeed, Zipcar's operating
procedures explicitly state that an agent

> should waive the $3.50 assistance fee if they need to
> make a change to a member's reservation due to issues
> with the Zipcar or other member behavior impacting the
> calling member's reservation.

Zipcar is correct.  The $3.50 fee offers a real choice and,
when it doesn't, the fee is waived.  Moreover, Blay makes no
allegation concerning why or how the fee is "grossly
disproportionate" or unrelated to Zipcar's costs.  Quite
logically, Zipcar reports that it charges for such calls because
it needs to pay staff to be available.  Without greater
substantiation, therefore, Blay's claims asserting that the $3.50
fee is an unenforceable penalty will be dismissed without
prejudice.

2) <u>Late fees</u>: Zipcar's late fees can be severe.  They start
at $50 and, after an hour, escalate to $100.  Again, however,
Zipcar contends that its customers are given several choices: 1)
reserve a car for another half-hour or hour if they might risk
running late, 2) extend an ongoing reservation at no extra charge
if the car is not reserved in the following time slot or 3) take
the risk that a fee will be assessed if the car is late.

Blay responds that the fees are grossly disproportionate to

-10-

any damages from a customer's breach. In support of that
proposition, he notes that fees increase significantly at hour
intervals, that late fees do not change depending on whether
another customer has reserved the car immediately after the
subject rental and that customers do not "choose" to return a car
one-minute late. Blay sums up as follows:

> Quite simply, Defendant's charges serve unfairly to
> punish one party rather than compensate the other who
> suffered no loss from the first party's breach.

(quotation marks and brackets omitted).

Not only is that statement unsupported by any concrete
allegations, it is flatly refutable. Zipcar is in the car-
sharing business and, in order for it to operate effectively, the
company is entitled to deter customers from returning cars late.
The obvious reason, as Zipcar states, is that quite often members
reserve vehicles back-to-back. In such situations, as noted in
the complaint, if a vehicle is returned late, Zipcar's policy is
to direct the customer whose car is not available on-time to
another vehicle nearby. Of course that causes Zipcar to suffer a
loss, contrary to Blay's cursory contention. At the very least,
Zipcar must, for example, pay an agent to deal with the two
customers and must incapacitate a second vehicle. More
abstractly, the service would not be as attractive to members if
they risked repeatedly arriving for a reservation only to find
that the car was missing. When a vehicle is not subject to back-

to-back reservations, moreover, Zipcar presents customers with an alternative to paying the late fee: they may extend their reservation for one half-hour (or however long is necessary) at the normal hourly rate which is substantially less than the late fee.

Apart from conclusory statements that are unsubstantiated, Blay has not, therefore, demonstrated why the late fee is an unenforceable penalty or grossly disproportionate to Zipcar's costs.  Accordingly, the allegations based upon those charges will be dismissed without prejudice.

3) <u>Ticket processing</u>: If a customer incurs a parking or traffic ticket and Zipcar processes it, the company charges a $20 processing fee.  Zipcar contends that customers have choices to avoid that fee: they may pay the ticket promptly, in which case Zipcar is not even notified or they may wait, have Zipcar handle it and pay $20.  Blay responds that this "blanket" fee is unrelated to any expense undertaken.  To support his contention that the fee is irrational, Blay speculates that a customer may, for instance, pay the ticket promptly but nonetheless be charged after Zipcar is erroneously notified that the ticket is unpaid. Blay also believes that a mechanism should exist to contest the fee if a ticket was erroneously issued.  In short, Blay states that he "can find no nexus between the fee and costs" and the penalty is disproportionate.

Blay conflates the burden of proof.  He is required to make more than threadbare allegations and must provide some indication that the fee is grossly disproportionate to Zipcar's cost.  His conclusory assertions are, however, unsupported and Zipcar's explanation that it is obliged to pay staff and bear other costs associated with the processing is compelling.  Accordingly, the claims based upon the processing fees will also be dismissed without prejudice as inadequately pled.

4) <u>Lost items</u>: For customers who accidentally leave belongings behind after a rental, Zipcar allows them to retrieve such items free of charge within three hours.  After that time, the customer must either try to recover the items through an online lost-and-found message board or reserve the vehicle again for at least one hour (the minimum time for any reservation).  Blay contends that customers are not given a true choice because they often do not realize within three hours that they have forgotten something and therefore must pay the excessive fee.

Blay again fails to demonstrate how this charge is "unfair and disproportionate".  If a customer needs to return to the vehicle to retrieve a lost item, Zipcar must make the vehicle available and another customer cannot rent it.  To be sure, one hour is longer than necessary to accomplish a retrieval but that is the minimum reservation time and there is a legitimate risk of customer abuse of the privilege.  In any case, the Court need not

speculate because it is plaintiff's burden to plead a colorable claim and his conclusory argument does not do so.  The claims based upon the lost item fees will, therefore, also be dismissed without prejudice.

5) Inactivity fee: According to the complaint, inactive members face several possible consequences.  First, if they maintain money on deposit with Zipcar, the company will charge them $20 per month until the funds are depleted or the member uses the service again.  Second, if an inactive member has no money deposited, Zipcar reserves the unilateral right to close the account without notice, in which case the customer must re-apply and pay an application fee to resume membership.  Third, a customer may simply terminate his membership in which case he must also re-apply to resume membership.  Such fees are assessed on top of an annual membership charge.

Zipcar sees these options as viable alternatives.  Blay characterizes them as powerful inducements that are not alternatives but are all designed, improperly, to compel customers to maintain an active account from which Zipcar benefits.

With respect to these fees, Blay's argument is colorable. In particular, the Court is unpersuaded that an inactive member costs Zipcar anything at all, let alone $20 per month, and Blay is correct that the clear motive seems to be to induce customers

-14-

to maintain active memberships.  Although it is still unclear
whether the charges might prove to be unenforceable penalties and
plaintiff's pleading is again cursory, the Court finds that the
allegations related to inactivity fees are sufficient to state a
cause of action and survive a motion to dismiss.

     With respect to the summary nature of all of his general
allegations, Blay reiterates that, at this stage, he cannot plead
with any greater detail and must rely on the "smell test" or
"intuition" without the benefit of discovery.  His expressed
plight is lamentable but ultimately unpersuasive.  First, Twombly
and Iqbal make clear what is required of a plaintiff in pleading
his claim and substantiating his allegations.  Neither "labels
and conclusions" nor "naked assertions devoid of further factual
enhancement" will do.  Iqbal, 129 S. Ct. at 1949 (citation and
quotation marks omitted).  Plaintiff's complaint simply
identifies the fees and then summarily jumps to the legal
conclusion that they are unenforceable penalties.  That is
insufficient.  Id. at 1949-50.

     Second, for the reasons described above, the Court disagrees
with the plaintiff's conclusory allegation that four of the five
subject fees "smell" unlawful and grossly disproportionate to
what is permissible.  None of the charges is excessive on its
face which is, of course, difficult to assess in the abstract.
Where plaintiff's alleged "intuition" is, however, either

unidentifiable or easily refuted, the Court will not look past clear deficiencies of the pleadings to allow such claims to move forward.

Finally, and perhaps most importantly, the Court is not persuaded that Blay is foreclosed or that he cannot state a claim if any of the deficient sub-claims has merit.  If, for instance, Blay can allege facts in support of his contention that "[f]ees similar to [Zipcar's] imposed by similar vehicle rental businesses are not nearly as exorbitant as Zipcar's", he may be able to state a cause of action.  Moreover, requiring greater substantiation is especially appropriate in the context of a putative class action where many potential plaintiffs presumably exist.

### b.  Standing

Zipcar contends that 1) standing must be analyzed separately for each claim and 2) the named plaintiff must personally have been injured in the manner asserted.  Here, it argues, Blay cannot establish standing for the fees that he never incurred or for injunctive and declaratory relief claims because he is no longer a Zipcar member.

Blay's response is not helpful.  With respect to charges that he incurred, Blay sidesteps the crux of Zipcar's argument and points to the complaint's allegation that he "incurred customer Charges at issue in this case".  He does not claim,

however, that he has incurred <u>all</u> of the customer charges at issue.  At oral argument, Blay's counsel represented that he understands that Blay was only charged the $3.50 agent fee, the late fee and the ticket processing fee.

As explained above, Blay's complaint contains viable claims only with respect to the inactivity fee.  Because he does not explicitly allege that he incurred such a fee, he cannot represent a putative class based only upon that claim.  <u>E.g.</u>, <u>Plumbers' Union Local No. 12 Pension Fund</u> v. <u>Nomura Asset Acceptance Corp.</u>, 658 F. Supp. 2d 299, 303-04 (D. Mass. 2009).  His claims based upon the inactivity fee will, therefore, be dismissed as well.

### c.   Quasi-Contract Remedies and the Voluntary Payment Doctrine

Zipcar also asserts that 1) Counts I and II of Blay's complaint allege quasi-contract remedies which must be dismissed because such remedies are impermissible where an express contract covers the relevant subject matter and 2) because Blay voluntarily paid the subject fees with full knowledge of the facts and without fraud, concealment or compulsion, he cannot make out a claim seeking to recover those payments pursuant to the so-called voluntary payment doctrine.  In light of the foregoing, the Court need not consider these arguments, including whether to resuscitate the antiquated voluntary payment doctrine which has received no recent validation of Massachusetts courts.

-17-

**ORDER**

In accordance with the foregoing,

1)    plaintiff's motion to strike (Docket No. 16) is **DENIED;** and

2)    defendant's motion to dismiss (Docket No. 6) is **ALLOWED** without prejudice.


**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated June 7, 2010